IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEITH BRYANT WEBB,** | : | **CIVIL ACTION NO. 1:06-CV-0778** |
| Petitioner | : | (Judge Conner) |
| v. | : | |
| **WARDEN TROY WILLIAMSON, ET AL.,** | : | |
| Respondents | : | |

### MEMORANDUM

Presently before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in which petitioner, Keith Bryant Webb ("Webb"), challenges the authority of the United States Parole Commission and procedures it implements. For the reasons set forth below, the petition will be denied.

**I.   Background**

On September 19, 1985, Webb was sentenced to a term of life imprisonment following a conviction of second degree murder in the United States District Court for the Western District of Texas. (Doc. 40, p. 4). He "murdered his six-year-old son . . . by beating the boy's head against a wall, until the skull had become soft, and by immersing him in water hot enough to cause the skin to peel from his thighs down." (Doc 16, p. 3). He then buried the child's remains. (Id.)

The United States Parole Commission ("parole commission") conducted an initial parole hearing in 1993. On July 19, 1993, Webb was notified, *via* a notice of action, that because of the level of offense severity, he would be continued to a

fifteen-year reconsideration hearing. (Id. at p. 7). In arriving at this decision, the parole commission stated the following:

> Your offense behavior has been rated as Category Eight severity because it involved murder. Your salient factor score (SFS-81) is 5. You have been in federal confinement as a result of your behavior for a total of 118 months. Guidelines established by the Commission indicate a range of 150+ months to be served before release for cases with good institutional adjustment and program achievement. In addition, you have committed rescission behavior classified as administrative. Guidelines established by the Commission indicate a range of 0-2 months for non-drug related infractions. You have committed 2 non-drug related infractions. Your aggregate guideline range is 150+ months to be served. After review of all relevant factors and information presented, a decision more than 48 months above the minimum guideline range is warranted because you tortured the victim by causing him to endure standing in scalding water and while injured, you failed to seek medical assistance which may have saved his life. As required by law, you have also been scheduled for a statutory interim hearing during June 1995.

(Id.). He was scheduled for a statutory interim hearing during June 1995, at which time a current psychological evaluation was to be made available to the parole commission. (Id.). The National Appeals Board ("the Board") affirmed the decision. (Id. at pp. 8-9).

Statutory interim hearings have been conducted every two years, resulting in no change in the July 19, 1993 decision. (Id. at pp. 10, 12, 14-15, 16,17-29). On each occasion that Webb pursued an administrative appeal, the parole commission's decisions were affirmed by the Board.

In this petition for writ of habeas corpus, Webb challenges the parole commission's most recent decision issued on August 29, 2005, which reiterated "no change in 15-year reconsideration date June 2008." (Id. at pp. 26-30). The Board affirmed that decision as follows:

> The Parole commission is not required to give you a release date under § 235(b)(3) of the 1984 Sentencing Reform Act. This "winding-up" provision only goes into effect shortly before the Parole Commission expires. The Commission was due to expire on October 31, 2005, but the Commission has been extended for another 3 years by the United States Parole Commission Extension and Sentencing Commission Authority Act of 2005, Pub.L.No. 109-76.
>
> The Commission has not extended your parole eligibility date of September 4, 1993. You are eligible for parole but the Commission has decided that you should not be paroled under the release criteria of 18 U.S.C. § 4206(a).
>
> There is no basis for your claim that the Commission has violated the Privacy Act by failing to maintain accurate records on you to assure fairness in your release determinations or violated its regulation at 28 C.F.R. § 2.19(c). You have been afforded disclosure of information in your files and the opportunity to present your arguments at parole hearings.
>
> As you have been informed in a previous decision (the December 28, 1995 notice of action on appeal), the Commission has not made a decision outside the guideline range and the Commission is not required to explain "good cause" for exceeding the guidelines. The Commission has not violated the statute at 18 U.S.C. § 4206(c). The 1995 notice of action also explained to you why the sentencing judge's findings concerning your offense did not invalidate the Commission's findings of aggravating offense factors that warranted the long continuance in your case.
>
> Even if the parole guidelines changed from those in effect from the date of your offense to the date of your parole considerations, application of the revised guidelines would not violate the Ex Post Facto Clause of the Constitution. Decision-making with parole

> guidelines retains substantial flexibility, especially in cases such as yours in which the guideline range has no maximum limit. (The guideline range in effect at the time of your crime also has no maximum limit.) You have not demonstrated that the use of the revised guidelines substantially increased the punishment for your murder offense.

(Doc. 40, p. 30).

## II.   Discussion

### A.   Constitutional Claims

#### 1.   Bill of Attainder

The Sentencing Reform Act of 1984 ("SRA") abolished the parole commission and repealed federal parole statutes. Pub.L.No. 98-473, Title II, ch. II, 98 Stat. 1987, 2017-2034 (codified as amended at 18 U.S.C. §§ 3551-3742 (1994)). In their place, the SRA set up a determinate sentencing scheme utilizing the sentencing guidelines. Id. The SRA became effective on November 1, 1987, Lewis v. Martin, 880 F.2d 288, 290 (10th Cir. 1989).

In order to process prisoners convicted under the old parole system, the life of the parole commission was originally extended to five years beyond the effective date of the SRA. See 98 Stat. at 2027, 2032, § 218(a)(5), § 235(b)(1)(A). The five-year provision was amended by § 316 of the Judicial Improvements Act of 1990, and again by the Parole Commission Phaseout Act of 1996. Congress has continued to extend the life of the parole commission and it is now scheduled to expire on October 31, 2008. See United States Parole Commission Extension and Sentencing

Commission Authority Act of 2005, Pub.L.No. 109-76, 119 Stat. 2035, Sec. 2 (September 29, 2005).

When the SRA was originally enacted, § 235(b)(3) instructed the parole commission to set a release date for prisoners before the expiration of the parole commission and "within the range that applies to the prisoner under the applicable parole guideline." Pub.L.No. 98-473, § 235(b)(3), 98 Stat. 2032 (1984). Just thirty-six days after the SRA became effective, § 235(b)(3) was amended to clarify that release dates were to be set under 18 U.S. C. § 4206. Section 235(b)(3), as amended by the 1987, 1990 and 1996 amendments, reads as follows:

> The United States Parole Commission shall set a release date, for an individual who will be in its jurisdiction on the day before the expiration of the fifteen years after the effective date of this Act, pursuant to 4206 of Title 18, United States Code. A release date set pursuant to this paragraph shall be set early enough to permit consideration of an appeal of the release date, in accordance with Parole Commission procedures, before the expiration of fifteen years following the effective date of this Act.

See Sentencing Reform Act of 1984, § 235(b)(3), (Title II of Comprehensive Crime Control Act of 1984, Pub.L.No. 98-473, 98 Stat. 1987 (1984), as amended by the Sentencing Act of 1987, §2(b)(2) of Pub.L.No. 100-82, 101 Stat. 1271 (November 1, 1987); the Judicial Improvements Act of 1990, § 316, Pub.L.No. 101-650, 104 Stat. 5115 (December 1, 1990); and the Parole Commission Phaseout Act of 1996, Pub.L.No. 104-232, 110 Stat. 3055 (October 2, 1996)).

Webb objects to application of the amendment. He contends that it constitutes a bill of attainder proscribed by Art. I, § 9, of the Constitution[1] because it targets "old law federal prisoners." (Doc. 1, p. 5). His argument is without merit.

A bill of attainder "legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." Nixon v. Adm'r of Gen. Services, 433 U.S. 425 (1977). The law in existence before 1987, permitted sentences beyond the SRA's guideline ranges. Significantly, the challenged amendment maintained the continuity of the law in place prior to the enactment of the SRA. Webb is a member of an entire class of persons affected by the amendment, not an "identifiable individual." Because the amendment does not single out any identifiable group of individuals, nor does it inflict any punishment upon Webb beyond maintaining his original sentence, he is not subject to a bill of attainder. Bledsoe v. United States, 384 F.3d 1232 (10th Cir. 2004).

2. Due Process

Likewise, his contention that his due process rights have been violated because the parole commission lacks statutory authority to exercise jurisdiction over his case is without merit. As stated above, Congress continues to extend the existence of the parole commission's responsibilities despite abolition of the commission by the Sentencing Reform Act of 1984.

---

[1] Article I, § 9, applicable to Congress, provides that "(n)o Bill of Attainder or ex post facto Law shall be passed," and Art. 1, § 10, applicable to the States, provides that "(n)o State shall . . . pass any Bill of Attainder, ex post facto Law . . . ."

   3. <u>Ex Post Facto</u>

The *Ex Post Facto* Clause forbids detrimental changes in law after the date of the criminal conduct.  <u>See</u> <u>Weaver v. Graham</u>, 450 U.S. 24, 28 (1981).  "Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment," but, rather, "the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated."  <u>Id</u>. at 30.

In the instant matter, because Webb continues to serve his sentence under the same conditions as when he committed his crime, application of the amendment is not a violation of the *Ex Post Facto* clause.  <u>See</u> <u>Bledsoe</u>, 384 F.3d. at 1239.

   4. <u>Equal Protection Clause</u>

Webb next asserts that his right to Equal Protection was violated by the amendment.   The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV § 1. This is not a command that all persons be treated alike but, rather, "a direction that all persons *similarly situated* should be treated alike." <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985) (emphasis added).  Since there are no facts showing that Webb was treated differently than any similarly situated prisoners, a viable equal protection claim has not been stated.

5.      Separation of Powers

Webb contends that the parole commission "unconstitutionally usurped the constitutional [sic] designated authority, power, and functions of the Legislative, and Judiciary Branches of the Government . . . [b]y means of imposing a fifteen years [sic] parole eligibility reconsideration parole date of June 2008. . . ." (Doc. 1, p. 9).

The Constitution has no express provision that prohibits one branch of government from exercising functions of the other branches. Geraghty v. U.S. Parole Comm'n, 719 F. 2d 1199, 1210 (3d Cir. 1983). "Instead the doctrine of separation of powers is inferred from the fact that the legislative, executive, and judicial functions are described in three separate articles of the Constitution. Springer v. Philippine Islands, 277 U.S. 189, 201, 48 S.Ct. 480, 482, 72 L.Ed. 845 (1928). The Constitution does not require three airtight departments of government. Nixon v. Administrator of General Services, 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867 (1977)." Id. at 1211. The roles of the judiciary and executive branch with regard to sentencing, have been described as follows:

> [T]oday the extent of a federal prisoner's confinement is initially determined by the sentencing judge, who selects a term within an often broad, congressionally prescribed range; release on parole is then available on review by the United States Parole Commission which, as a general rule, may conditionally release a prisoner any time after he serves one-third of the judicially fixed term. See 18 U.S.C. § 4205 (1976 ed.).
>
> As we emphasized earlier, [United States v.] Addonizio, [442 U.S. 178 (1979)], reiterated this three-way sharing of responsibility in which Congress sets the statutory maximum sentence, the courts

>impose sentences within those limits, and the Commission establishes release dates within the eligibility range of the courts' sentences. Both Addonizio and Grayson echo Chief Justice Warren's observation on the separation of powers doctrine that "a given policy can be implemented only by a combination of legislative enactment, judicial application, and executive implementation." United States v. Brown, 381 U.S. [437] at 443, 85 S.Ct. [1707] at 1712 [(1965)].

Id. (citing United States v. Grayson, 438 U.S. 41, 47 (1978)). There is no question that the parole commission is acting within its authority in considering Webb's eligibility for release.

B.  Claims of Parole Commission Error[2]

The function of judicial review on a petition for writ of habeas corpus in the parole context is to determine whether the parole commission abused its discretion. Furnari v. Warden, 218 F.3d 250, 254 (3d Cir. 2000). Review is limited to whether there is a rational basis in the record for the conclusions embodied in the parole commission's statement of reasons, which should include whether the criteria, appropriate, rational and consistent with its enabling statutes, has been followed so that its decision is not arbitrary and capricious, nor based on impermissible considerations. Id. (citing Zannino v. Arnold, 531 F.2d 687, 690-91 (3d Cir. 1976)).

---

[2]Most of Webb's arguments are not about parole eligibility, but rather about parole suitability rehearings that occur after an initial hearing in which parole is denied. Eligibility for parole is not synonymous with suitability. The fact that a prisoner may be deemed eligible for parole by statute does not mean that he is regarded as suitable for parole in the exercise of administrative discretion. It is undisputed that Webb is eligible for parole. However, the parole commission does not believe he will be suitable for release on parole for at least fifteen years from the date of his initial hearing. See Artis v. U.S. Dept. of Justice, 166 F. Supp. 2d 126, 132 n. 10 (D.N.J., 2001).

The court is not empowered to substitute its judgment for that of the parole commission unless the commission's exercise of discretion represents an egregious departure from rational decision-making.  See Butler v. U.S. Parole Commission, 570 F. Supp. 67, 77 (M.D.Pa. 1983).

      1.     Double-Counting

Webb argues that the parole commission impermissibly used the same inherent characteristics of his murder and injury to a child to place him in offense category eight, and then used the same factors to deny him parole and continue him to a rehearing after fifteen years.  (Doc. 1, p. 18).

"Double-counting" occurs when the parole commission impermissibly considers the same factors as a basis for guideline departure that it used either to place the inmate in a particular severity category or to calculate his Salient Factor Score.  Malik v. Brennan, 743 F. Supp. 639, 644 (W.D.Wis.1990), *aff'd*, 943 F.2d 54 (10th Cir. 1991).  The Third Circuit Court of Appeals concluded that "[s]ince the purpose of the guidelines is to set forth the factors that the Commission consider in setting a presumptive release date, it would be irrational and arbitrary to use those same factors to take a prisoner outside the guidelines."  Harris v. Martin, 792 F.2d 52, 54 (3d Cir. 1986); see Romano v. Baer, 805 F.2d 268, 271 (7th Cir.1986) (finding that double-counting constitutes an abuse of discretion.); Muhammad v. Mendez, 200 F. Supp.2d 466, 472 (M.D. Pa. 2002).

At the statutory interim hearing, the parole commission stated that "[a] departure from the guidelines at this consideration is not warranted." (Doc. 40, p. 28). His offense behavior has been rated as Category Eight and his guideline range requires that 150-plus months be served before release. (Doc. 40, p. 7). On its face, this guideline range contains no upper limit. See Madonna v. U.S. Parole Commission, 900 F.2d 24, 26 (3d Cir. 1990). This fact is further noted in the regulations as follows:

> Note: For Category Eight, no upper limits are specified due to the extreme variability of the cases within this category. For decisions exceeding the lower limit of the applicable guideline category by more than 48 months, the Commission will specify the pertinent case factors upon which it relied in reaching its decision, which may include the absence of any factors mitigating the offense. This procedure is intended to ensure that the prisoner understands that individualized consideration has been given to the facts of the case, and not to suggest that a grant of parole is to be presumed for any class of Category Eight offenders. However, a murder committed to silence a victim or witness, a contract murder, a murder by torture, the murder of a law enforcement officer to carry out an offense, or a murder committed to further the aims of an on-going criminal operation, shall not justify a grant of parole at any point in the prisoner's sentence unless there are compelling circumstances in mitigation (e.g., a youthful offender who participated in a murder planned and executed by his parent). Such aggravated crimes are considered, by definition, at the extreme high end of Category Eight offenses. For these cases, the expiration of the sentence is deemed to be a decision at the maximum limit of the guideline range. (The fact that an offense does not fall under the definition contained herein does not mean that the Commission is obliged to grant a parole.)

28 C.F.R. § 2.20 n. 1. Because the guideline range is unbounded from above, no decision outside the guidelines has occurred, or could occur, in this case. Hence, double-counting does not apply.

### 2. Issuance of New Statement of Reasons for Parole Denial

Webb further contends that the parole commission failed to "furnish him a meaningful new statement of reasons, so that he can receive a[n] understandable explanation of his parole status." (Doc. 1, p. 13). He takes the position that his challenges to the SRA constituted significant new information. (Id. at p. 14).

Under the applicable regulations, an interim hearing is not a *de novo* determination of the prisoner's presumptive release date, but rather, a review of developments subsequent to the parole commission's initial determination. See 28 C.F.R. § 2.14(a) ("The purpose of an interim hearing required by 18 U.S.C. § 4208(h) shall be to consider any significant developments or changes in the prisoner's status that may have occurred subsequent to the initial hearing."). "[W]hen new information is significant enough to seriously undermine the basis for the initial determination, the Parole Commission must provide a proper statement of reasons when it denies parole following an interim hearing. It cannot continue to rely on the statement of reasons from the initial determination, which no longer can suffice." Furnari, 218 F.3d at 257.

Webb's arguments regarding the SRA do not constitute significant new information. The only new information presented at the statutory interim hearing was a description of the disciplinary infractions incurred by Webb since the last hearing. (Doc. 40, p. 27). Clearly such information would not undermine the parole commission's initial determination regarding Webb's release date.

### 3. Failure to Set a Release Date

Webb's contention that the parole commission is required to set a release date is equally unavailing. Section 235(b)(3) only requires that a release date be set "early enough to permit consideration of an appeal" before October 31, 2008. See Sterling v. Hood, 120 Fed. Appx. 278 (10th Cir. 2005); see also Romano v. Luther, 816 F.2d 832, 839 (2d Cir.1987) (stating that although § 235(b)(3) became effective upon enactment, five-year (now 21-year) transition period begins Nov. 1, 1987) (cited with approval in Lyons v. Mendez, 303 F.3d 285, 287 n. 2 (2002)). It has been estimated that appeals of final release dates will take three to six months. See 28 C.F.R. 2.64 (1987); 52 Fed. Reg. 5763-64 (Feb. 26, 1987). Thus, the parole commission has no present duty to set a release date for Webb. Cf. Romano v. Luther, 816 F.2d 832, 842 (1987)); Hackett v. U.S. Parole Commission, 851 F.2d 127 (6th Cir.1987); Riley v. Hastings, 2005 WL 3277402 (E.D.Ky. Dec. 2, 2005).

### 4. Consideration of Aggravating Factors

Webb argues that the parole commission impermissibly considered the fact that he tortured his victim by causing him to endure standing in scalding water and, failed to seek medical assistance which might have saved his victim's life. (Doc. 1, p. 15). The parole commission is afforded wide discretion in making the necessary evaluation, and the nature of Webb's offense is a relevant factor in making that determination. See Ronning v. United States, 547 F.Supp. 301, 306 (M.D.Pa. 1982). Pursuant to the standards set forth in Furnari, 531 F.2d at 691, the court finds that

13

the parole commission was within its authority in considering the brutality of Webb's crime and did not abuse its discretion.

## III.    Conclusion

For the reasons set forth above, Webb's petition for writ of habeas corpus will be denied.

An appropriate order will issue.

  S/ Christopher C. Conner  
CHRISTOPHER C. CONNER  
United States District Judge

Dated:      May 16, 2007

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEITH BRYANT WEBB,** | : | **CIVIL ACTION NO. 1:06-CV-0778** |
| Petitioner | : | (Judge Conner) |
| v. | : | |
| **WARDEN TROY WILLIAMSON, ET AL.,** | : | |
| Respondents | : | |

## ORDER

AND NOW, this 16th day of May, 2007, upon consideration of the petition for writ of habeas corpus (Doc. 1), it is hereby ORDERED that:

1. The petition is DENIED.

2. The Clerk of Court is directed to CLOSE this case.


          S/ Christopher C. Conner
          CHRISTOPHER C. CONNER
          United States District Judge